UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEATHER CUCCIA,<br><br>              Plaintiff,<br><br>-against-<br><br>HF MANAGEMENT SERVICES, LLC d/b/a HEALTHFIRST INC. and GENESIS BAYUELO-PERRI,<br><br>              Defendants. | 24-cv-02091 (JPC)<br><br>**DECLARATION OF<br>GENESIS BAYUELO-PERRI** |

I, Genesis Bayuelo-Perri, hereby declare as follows:

1. I have been employed with defendant HF Management Services LLC ("HFMS") as a Community Engagement Manager in its Community Engagement department ("CE") since 2017. I have personal knowledge of the information set forth below and can testify competently thereto. I submit this declaration in support of the defendants' motion for summary judgment.

2. Healthfirst, Inc. is a not-for-profit that offers low-cost health insurance, mostly through government programs such as Medicaid and Medicare Advantage, to persons in downstate New York. My staff and I are employed by HFMS to support Healthfirst, Inc.

3. In 2019, I interviewed and recommended Plaintiff Heather Cuccia ("Plaintiff") for hire at HFMS as a community engagement specialist. At the time, community engagement specialists helped the CE department strengthen Healthfirst's bond with local communities (*e.g.,* through joint events) and help drive effective communications with those communities. Some of their work was performed in the field, outside HFMS's offices.

4. In December 2019, HFMS hired Plaintiff following my recommendation. Plaintiff thereafter reported primarily to me until her discharge for unsatisfactory performance in January

2022. I recommended it more than a month earlier, in early December 2021, but was told that it would be deferred to January because HFMS generally avoids layoffs during the holiday period.

5. Throughout her tenure as a community engagement specialist, Plaintiff was assigned to work in, and worked predominantly within, Nassau County, New York. During her last year of employment with HFMS, I understand Plaintiff worked on one project outside Nassau County, for my colleague, Tamar Ogburn, which was short-lived and did not require Plaintiff to work regularly within New York City.

6. In Plaintiff's first year on the job, the COVID-19 shutdown reduced her workload and travel obligations significantly. For the year 2020, I rated Plaintiff's work performance as having a "solid impact," which was an average rating, because she performed adequately given what little work was required that year.

7. After the shutdown ended, we increased performance expectations accordingly. By May 2021, however, Plaintiff's job performance deteriorated significantly. She missed both deadlines and details, failed to follow instructions, and exhibited poor time management and overall, unsatisfactory work performance.

8. I brought my concerns to Plaintiff's attention and coached her on the need to immediately improve her job performance at least five times from May to September 2021. Attached hereto as <u>Exhibit A</u> is a true and correct copy of my notes of both (i) these discussions on May 3, June 4, June 28, July 21, and August 24, 2021, and (ii) other incidents of Plaintiff's poor job performance that summer.

9. By this time, I was exasperated. On September 23, 2021, I gave Plaintiff a written warning for unsatisfactory performance. (A true and correct copy of this warning and my email accompanying it is attached hereto as <u>Exhibit B</u>.) I noted Plaintiff's ongoing lack of attention to

detail, inability to follow instructions, poor time management while coordinating projects, missed deadlines, and her delayed responses and reporting. I also cited some of our prior discussions and some of the tools and resources I had suggested. I noted at the end that we would continue to meet weekly but "[i]mmediate improvement" was "required" and "[f]ailure to meet the above noted action plans will result in further disciplinary action, up to and including termination of employment."

10. Despite the written warning, Plaintiff failed to demonstrate satisfactory job performance. Within a day or so of receiving the warning, Plaintiff took a leave of absence for around six weeks (late September to early November) for reasons not disclosed to me.

11. When Plaintiff returned in November 2021, she resumed her poor job performance. She again missed deadlines. She delayed completion of a Medicare Dashboard Initiative report that management had to complete as a result. She was late with her weekly recap reports and submitted them in the wrong format, even after she was given the correct format. She also failed to provide me with data that I requested, multiple times, which caused me to be late with my monthly financial reports. Plaintiff was not proactive. I had to remind her of deadlines. And she was the only one on my team who completely neglected to participate in the Flu Vaccine Initiative project. Open enrollment occurs every November, so it is typically a critical month for HFMS. I expected my staff to be fully engaged, but Plaintiff was disengaged, which was not acceptable.

12. On or about December 3, 2021, I was advised by Ebony Kerr-Percy in the Human Resources department that Plaintiff had recently caused a commotion by having a former employee join a phone call unannounced in which another employee called him lazy. I added this incident to the other performance reasons I cited in my Justification for Termination memorandum dated December 8, 2021, regarding Plaintiff ("JTT") as it was yet another example of Plaintiff not

being a team player. (A true and correct copy of the JTT is attached hereto as <u>Exhibit C</u>.) At the end, I noted:

> Keeping Heather employed with the company is a risk because she does not contribute to the team, I do not have confidence in her work, [and] I cannot trust that when she is assigned something it will be done. I have to follow up with her multiple times to receive reports and even then the work is not correct. Given the recent situation from November 18th, Heather does not encourage a positive work environment and we are unsure that she can represent the department and Healthfirst in a positive light at all times.

13. As I understand HFMS does not typically discharge staff during the holiday season, from Thanksgiving through New Year's Day, as a matter of policy, the date for Plaintiff's termination was deferred to January 10, 2022.

14. Neither Plaintiff's race or national origin played any part in my decision to recommend her discharge. Plaintiff is Caucasian, as am I. Plaintiff is Italian, as am I. Further, I was never informed that Plaintiff had any type of disability or medical condition and she never asked me to accommodate any disability. To the extent Plaintiff had a disability, it played no role in my decision to recommend her discharge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18 day of November 2025 in Manhattan, New York.

Genesis Bayuelo-Perri