UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEATHER CUCCIA,<br><br>Plaintiff,<br><br>-v-<br><br>HF MANAGEMENT SERVICES, LLC d/b/a Healthfirst Inc. and GENESIS BAYUELO-PERRI,<br><br>Defendants. | 24 Civ. 2091 (JPC)<br><br>OPINION AND ORDER |

JOHN P. CRONAN, United States District Judge:

Plaintiff Heather Cuccia's performance as a community engagement specialist with Defendant HF Management Services, LLC ("HF Management") substantially declined in 2021. This prompted her supervisor, Defendant Genesis Bayuelo-Perri, to commence a series of coaching sessions meant to teach Plaintiff to meet deadlines, be more organized, and improve her overall performance. After these sessions did not improve Plaintiff's work performance, Bayuelo-Perri issued Plaintiff a performance improvement plan accompanied by a warning that failure to fulfill its action plan could result in termination. Soon after, Plaintiff took a leave of absence to recover from a leg injury, but she continued to underperform after her return. Eventually, in December 2021, Bayuelo-Perri recommended to the company's human resources department that Plaintiff be terminated. HF Management fired Plaintiff in January 2022.

In this action, Plaintiff alleges that Defendants discriminated against her based on her race, color, national origin, and disability status, and retaliated against her for complaining about her work environment and for requesting reasonable accommodations for her disabilities, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act

("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and 42 U.S.C. § 1981. With discovery closed, Defendants have moved for summary judgment on all of those claims. Because Plaintiff does not set forth sufficient evidence that would allow a rational jury to find in her favor on any of her claims, the Court grants Defendants' motion in its entirety.

## I. Background

### A. Factual Background[1]

HF Management provides support to Healthfirst, Inc., a non-profit that offers low-cost health insurance to New Yorkers, including through government programs such as Medicaid and Medicare. Defts. 56.1 Stmt. ¶ 1; Bayuelo-Perri Decl. ¶ 2. Plaintiff previously worked for HF Management as a community site developer from 2012 to 2014. Defts. 56.1 Stmt. ¶ 3. Then, in December 2019, Plaintiff was re-hired by HF Management, this time as a community engagement specialist. *Id.* Earlier that year, Plaintiff had interviewed with Bayuelo-Perri, a manager in HF Management's community engagement department, who recommended Plaintiff's hiring. *Id.* ¶ 4. Bayuelo-Perri and Plaintiff are both Caucasian and of Italian descent. *Id.* ¶ 5.

---

[1] The following facts are drawn primarily from the parties' statements and counterstatements of undisputed material facts under Local Civil Rule 56.1(a), Dkt. 61 ("Defts. 56.1 Stmt."); Dkt. 69 ("Pl. 56.1 Counter Stmt."); Dkt. 72 (Defendants' response to Plaintiff's counter statement of undisputed facts pursuant to Local Civil Rule 56.1), and the declarations filed by the parties with attached exhibits, Dkt. 59 ("Warner Decl."); Dkt. 60 ("Bayuelo-Perri Decl."); Dkt. 68 (declaration of Plaintiff's attorney). Unless otherwise noted, the Court cites only to a party's statement of undisputed material facts when the opposing party does not dispute the fact, has not offered admissible evidence to refute it, or simply seeks to add its own "spin" on the fact or otherwise disputes the inferences drawn from it. Among the exhibits filed by the parties were transcript excerpts from the depositions of Plaintiff, Bayuelo-Perri, and Cherise Robinson. Those deposition transcripts are located at: (1) Warner Decl., Exh. A, and Goddard Decl., Exh. 2, collectively as "Cuccia Dep. Tr."; (2) Warner Decl., Exh. B, and Goddard Decl., Exh. 8, collectively as "Bayuelo-Perri Dep. Tr."; and (3) Warner Decl., Exh. C (Robinson's deposition transcript).

Community engagement specialists spend much of their time developing Healthfirst's ties to local communities through joint events and partnerships. *Id.* ¶ 11. Among Plaintiff's duties were creating and managing relationships with community organizations and influencers, managing community engagement activities, submitting reports documenting community impact, working with other Healthfirst teams, and managing special projects. *Id.* ¶ 12. The job description for community engagement specialists specified that they should have "[s]trong project management skills" and "[m]ust be willing to work nights and weekend (Saturday and Sunday) events as needed." Cuccia Dep. Tr., Exh. D ("Job Description") at 1-2; *see* Defts. 56.1 Stmt. ¶ 13.

For most of the time between December 2019 and January 2022, Plaintiff reported directly to Bayuelo-Perri. Defts. 56.1 Stmt. ¶ 7.[2] Plaintiff worked at locations in Nassau County, New York, while Bayuelo-Perri typically worked in the field. Defts. 56.1 Stmt. ¶¶ 8-9; Bayuelo-Perri Dep. Tr. at 12:16-23. Bayuelo-Perri held weekly "performance improvement meetings" with Plaintiff, and Bayuelo-Perri kept notes from those meetings in a Word document on her computer. Pl. 56.1 Counter Stmt. ¶¶ 102-104.

The Covid-19 pandemic hit during Plaintiff's first year as a community engagement specialist and significantly reduced her fieldwork, although the parties dispute whether pandemic-related shutdowns impacted her overall workload. *Id.* ¶ 14. Irrespective of the volume of work, Bayuelo-Perri ranked Plaintiff's overall performance in 2020 as "solid impact," or average, Bayuelo-Perri Dep. Tr., Exh. 1 ("2020 Performance Review") at HF0008; Defts. 56.1 Stmt. ¶ 15, and as "exceptional impact" in three specific categories, 2020 Performance Review at HF0015-0016, HF0023, HF0028-0029. That year, Plaintiff also received Healthfirst's Trailblazer Award,

[2] Bayuelo-Perri was on leave for several months in 2020. Pl. 56.1 Counter Stmt. ¶ 7; Bayuelo-Perri Dep. Tr. at 61:19-22.

Defts. 56.1 Stmt. ¶ 15, which Bayuelo-Perri testified is awarded to an employee for "[g]oing above and beyond," Bayuelo-Perri Dep. Tr. at 74:6. In Plaintiff's performance evaluation, however, Bayuelo-Perri observed that Plaintiff "struggles with accepting and responding to constructive feedback without becoming defensive and, at times, argumentative," and that her tone could sometimes "be perceived as inappropriate." 2020 Performance Review at HF0014. Bayuelo-Perri further noted that Plaintiff had discussed those areas needing improvement with management. *Id.* Bayuelo-Perri discussed this performance review with Plaintiff in early 2021. Defts. 56.1 Stmt. ¶ 17.

According to Defendants, Plaintiff's performance started to deteriorate noticeably in 2021. *Id.* ¶ 19. By May 2021, Plaintiff had missed deadlines, planned and executed events less effectively, failed to follow instructions, failed to follow up with partners, managed time poorly, and generally performed unsatisfactorily. *Id.*; *see* Bayuelo-Perri Decl. ¶ 7; Bayuelo-Perri Dep. Tr. at 76:12-24. Plaintiff's delays resulted in Bayuelo-Perri being late on many of the projects they were working on together. Bayuelo-Perri Dep. Tr. at 76:21-24. Moreover, Bayuelo-Perri observed, Plaintiff's attitude towards her work deteriorated, including when dealing with outside partners. *Id.* at 76:24-77:3. While not disputing Bayuelo-Perri's observations, *see* Cuccia Dep. Tr. at 222:4-7 ("Q. Would it surprise you if people . . . recognized that you were unhappy? A. No."), Plaintiff avers that she was overworked at that time because she was covering for a colleague and was facing deadlines from multiple managers, *see id.* at 166:17-167:6.

On May 3, 2021, Bayuelo-Perri initiated a series of meetings in which Bayuelo-Perri informed Plaintiff of her performance issues and coached her on how to improve. Defts. 56.1 Stmt. ¶¶ 23, 25. In her notes from these meetings, Bayuelo-Perri records that they discussed the importance of time management, deadlines, collaboration, and pre-meeting preparation. Bayuelo-

Perri Decl., Exh. A ("Progress Notes") at HF0071-HF0072. In their third session on June 28, 2021, Bayuelo-Perri inquired about Plaintiff's "wellbeing" and asked whether she needed to take time off "due to her expressing having a personal lost [sic]." *Id.* at HF0072. Plaintiff stated that she did not need time off. *Id.* Plaintiff and Bayuelo-Perri held a fourth coaching session on August 24, 2021. *Id.* at HF0074.

Tensions rose in July 2021, when Plaintiff refused Bayuelo-Perri's demand that she work an event on an upcoming Sunday. Pl. 56.1 Counter Stmt. ¶ 30; Cuccia Dep. Tr. at 20:15-16. In a raised voice during a phone call, Bayuelo-Perri told Plaintiff that it was Plaintiff's obligation to work that Sunday, *see* Defts. 56.1 Stmt. ¶ 30; Cuccia Dep. Tr. at 174:2-3, 174:16-17, 174:20, 175:13-15, prompting Plaintiff to complain in an email to a human resources employee that "[t]he way in which I am spoken to is extremely hostile for this work environment," Cuccia Dep. Tr. at 173:23-25. But Plaintiff testified that the hostility she felt was unrelated to her Italian background, her race, the fact that she was not Hispanic, or any disability. *Id.* at 178:23-179:20. On August 3, 2021, Plaintiff spoke with human resources about a potential leave of absence, but again ultimately declined to take one. Defts. 56.1 Stmt. ¶ 32.

Plaintiff's performance over the next few months further exasperated Bayuelo-Perri. *See* Bayuelo-Perri Decl. ¶ 9. On August 18, 2021, Plaintiff attended a meeting of her team and upper management to address "bandwidth and collaboration," but despite complaining about last-minute staffing requirements in the past, she did not ask questions or provide input at the meeting. Progress Notes at HF0074; *see* Defts. 56.1 Stmt. ¶ 33. At a meeting on August 24, 2021, members of the sales team and community engagement managers grew concerned with Plaintiff's demonstrated "lack of initiative" with respect to the upcoming month's events. Progress Notes at HF0073. She presented only on supermarket events and did not consider "target territories

opportunities, community activities or Medicare events," according to Bayuelo-Perri's notes. *Id.* That same day, Bayuelo-Perri asked Plaintiff if she was "interested in contacting Italian/American[] organizations" for cultural events in October, but Plaintiff responded that she would "have to pass." Cuccia Dep. Tr., Exh. AA at HF0440-HF0441 (email exchange between Plaintiff and Bayuelo-Perri). And at a September 10, 2021 meeting, Plaintiff was the only member of the community engagement team with no activities to report that week, Defts. 56.1 Stmt. ¶ 36, and when asked for an explanation why that was the case, she offered none, Progress Notes at HF0075.

On September 23, 2021, Plaintiff received a "written warning for unsatisfactory performance" from Bayuelo-Perri, which the parties refer to as a performance improvement plan ("PIP"). Defts. 56.1 Stmt. ¶ 38; *see* Bayuelo-Perri Decl., Exh. B ("PIP Email"). In the PIP, Bayuelo-Perri identified six issues: Plaintiff's "[o]ngoing lack of attention to detail," "[i]nability to follow instructions," "[p]oor time management while coordinating projects," "[d]eadlines missed," "[d]elays with report submission," and "[d]elayed responses (emails/calls etc.)." PIP Email at HF0032. Bayuelo-Perri further informed Plaintiff in the PIP that they had met monthly since May to discuss Plaintiff's performance issues but she was "not always receptive to feedback" and "continue[d] to not meet [her] job expectations." *Id.* at HF0033. After reminding Plaintiff of her job responsibilities and suggesting an "action plan," the PIP stated that "[i]mmediate improvement is required, and it is expected that [she] will be meeting and sustaining performance standards." *Id.* at HF0033-HF0034. It further warned Plaintiff that "[f]ailure to meet the . . . action plans will result in further disciplinary action, up to and including termination of employment." *Id.* at HF0034. The next day, at Bayuelo-Perri's urging, Plaintiff met with a colleague for peer

coaching. Defts. 56.1 Stmt. ¶ 42. That colleague later reported to Bayuelo-Perri that Plaintiff was not attentive and the meeting was not productive. *Id.* ¶ 43.

On September 27, 2021, Plaintiff requested and was granted time off beginning that day to be treated for ankle and back pain. *Id.* ¶¶ 44, 46; Cuccia Dep. Tr. at 223:3-8. Upon returning to work on November 8, 2021, Defts. 56.1 Stmt. ¶ 49, Plaintiff did not request any accommodation for her ankle or sciatica, *id.* ¶ 51, and the doctor's note she presented Defendants authorized her to perform "normal work activities," Cuccia Dep. Tr., Exh. K ("Doctor's Note"). Bayuelo-Perri brought her up to speed and Plaintiff joined eight colleagues for a Medicare initiative that involved a long period of walking in Brooklyn. Defts. 56.1 Stmt. ¶ 52; Cuccia Dep. Tr. at 223:23-224:7. That was the only day through the rest of Plaintiff's time at HF Management that required long periods of walking. Defts. 56.1 Stmt. ¶ 52.

Plaintiff's substandard performance continued. Bayuelo-Perri attests that Plaintiff was disengaged from her work during November, a particularly important month at HF Management given open-enrollment season. Bayuelo-Perri Decl. ¶ 11. Plaintiff was late with her weekly recap reports and submitted them incorrectly. *Id.*; *see* Defts. 56.1 Stmt. ¶ 59. She failed to respond to multiple requests from Bayuelo-Perri for data, causing Bayuelo-Perri to be late in submitting her monthly financial reports. Bayuelo-Perri Decl. ¶ 11. On November 18, 2021, an employee complained that Plaintiff had disrupted a work call by inviting a former colleague to join, unannounced, and a human resources employee who investigated that phone call concluded that Plaintiff's conduct had unnecessarily caused a commotion. Defts. 56.1 Stmt. ¶¶ 55-56.

Bayuelo-Perri eventually decided that Plaintiff should be terminated, and on December 3, 2021, drafted a "Justification of Termination" memorandum. *Id.* ¶¶ 61-62; *see* Bayuelo-Perri Decl., Exh. C ("JOT"). Bayuelo-Perri sent the Justification of Termination memorandum to

human resources on December 8, 2021, recommending Plaintiff's termination as of January 10, 2022. Defts. 56.1 Stmt. ¶ 62; JOT at 1. In the Justification of Termination memorandum, Bayuelo-Perri recommended termination based on Plaintiff's inattention to detail, "inability to follow instructions, poor time management while coordinating projects and delays with report submission." JOT at 1. The memorandum further recited that Plaintiff "received coaching and feedback on her performance and improvement was not demonstrated" since the PIP was issued in September 2021. *Id.* Bayuelo-Perri also opined that "[k]eeping [Plaintiff] employed . . . is a risk because [Plaintiff] does not contribute to the team, [Bayuelo-Perri does] not have confidence in [Plaintiff's] work, [and Bayuelo-Perri] cannot trust that when [Plaintiff] is assigned something it will be done." *Id.* at 2. Bayuelo-Perri further wrote that she must "follow up with [Plaintiff] multiple times to receive reports and even then the work is not correct." *Id.* Citing the November 18 phone call, Bayuelo-Perri wrote that Plaintiff "does not encourage a positive work environment and we are unsure that she can represent the department and Healthfirst in a positive light at all times." *Id.* Though the Justification of Termination memorandum recommended "immediate termination," *id.*, its proposed action date was January 10, 2022, *id.* at 1, because, according to Bayuelo-Perri, the company has a policy of not terminating staff during the holiday season, Bayuelo-Perri Dep. Tr. at 122:15-19.

Meanwhile, Plaintiff developed severe anemia in mid-December 2021 and was prescribed five treatments of iron infusions to begin on Friday, January 7, 2022. Defts. 56.1 Stmt. ¶¶ 67-68; Cuccia Dep. Tr. at 124:17-125:8. Also on January 7, 2022—one business day before the termination date proposed in the Justification of Termination memorandum—Plaintiff asked for time off on Fridays, beginning the next week, for "a medical purpose," which was granted. Defts. 56.1 Stmt. ¶¶ 69-70. Defendants terminated Plaintiff on January 10, 2022. *Id.* ¶ 73.

### B. Procedural History

Plaintiff initiated this action in New York Supreme Court, New York County, by summons and notice on August 7, 2023, and Defendants removed it to this Court on March 20, 2024. *See* Dkt. 1. Plaintiff moved to remand on April 19, 2024, Dkt. 9, but withdrew that motion following briefing, *see* Dkt. 25. Plaintiff filed her Complaint on November 5, 2024, Dkt. 26, and amended it on January 3, 2025, Dkt. 36 ("Am. Compl."). The Amended Complaint brings claims against HF Management for discrimination based on race, color, and national origin in violation of Title VII and the NYSHRL ("First Cause of Action"), *see id.* ¶¶ 51-56; disability discrimination, for failure to grant a reasonable accommodation and termination after making an accommodation request, in violation of the ADA ("Third Cause of Action"), *see id.* ¶¶ 63-67;[3] and retaliation in violation of the ADA and the NYSHRL ("Fifth Cause of Action"), *see id.* ¶¶ 75-81. Against both Defendants, Plaintiff alleges discrimination in violation of 42 U.S.C. § 1981 and the NYCHRL ("Second Cause of Action"), *see id.* ¶¶ 57-62, and retaliation in violation of the NYCHRL ("Fourth Cause of Action"), *see id.* ¶¶ 68-74.

Defendants moved for summary judgment on all of Plaintiff's claims on November 20, 2025. Dkts. 58-61, 62 ("Motion"). Plaintiff opposed the motion on January 16, 2026, Dkts. 67 ("Opposition"), 68-69, and Defendants replied on February 19, 2026, Dkts. 70 ("Reply"), 72.

## II. Legal Standard

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

[3] While the heading of the Third Cause of Action says that Plaintiff brings a disability discrimination claim under "the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law," Am. Compl. at 9, the Cause of Action alleges a violation of only the ADA, *id.* ¶¶ 64-67.

Civ. P. 56(a). "Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In conducting this review, the Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in favor of the nonmoving party." *Mhany Mgmt.*, 819 F.3d at 620.

"The movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,' and, if satisfied, the burden then shifts to the non-movant to present 'evidence sufficient to satisfy every element of the claim.'" *Chen*, 2019 WL 1244291, at *4 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citation modified). The non-movant must present more than a "scintilla of evidence" to survive summary judgment. *Anderson*, 477 U.S. at 252. "Where no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

## III. Discussion

### A. No Rational Jury Could Find that Defendants Discriminated Based on Plaintiff's Race, Color, or National Origin.

Title VII, the NYSHRL, and the NYCHRL prohibit discrimination in employment based on race, color, and national origin. *See* 42 U.S.C. § 2000e-2(a); N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a). Section 1981 guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citation modified). Because the NYCHRL imposes the most favorable standards for Plaintiff, the Court begins with her discrimination claim under that law.[4] *See Kurtanidze v. Mizuho Bank, Ltd.*, No. 23 Civ. 8716 (PAE), 2025 WL 1898927, at *11 (S.D.N.Y. July 9, 2025) (analyzing the NYCHRL claims first and explaining that the NYCHRL's liability standards are more lenient than those of Title VII and Section 1981).

A claim of discrimination under the NYCHRL requires a plaintiff to "only show differential treatment—that she is treated less well—because of a discriminatory intent." *Mihalik*, 715 F.3d at 110 (citation modified). A defendant moving for summary judgment on a NYCHRL discrimination claim must prevail "under both the familiar framework of *McDonnell Douglas* and under the newer mixed motive framework, which imposes a lesser burden on a plaintiff opposing such a motion." *Jones v. City of New York*, No. 22-1867, 2023 WL 6205630, at * 1 n.1 (2d Cir.

[4] Because the Court determines that summary judgment is warranted on the merits of Plaintiff's NYCHRL claim, it need not address whether she falls within that statute's geographic protection. *See* Motion at 14-15 (arguing that the Court should dismiss Plaintiff's NYCHRL claims because she worked outside New York City).

Sept. 25, 2023) (citation modified); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must first "establish a prima facie case of discrimination, and the defendant then has the opportunity to offer legitimate reasons for its actions." *Spires v. MetLife Grp., Inc.*, No. 21-2014, 2023 WL 545350, at *1 (2d Cir. Jan. 27, 2023) (summary order) (citation modified). "If the defendant satisfies that burden, summary judgment is appropriate if no reasonable jury could conclude either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (citation modified). So summary judgment is appropriate as to a NYCHRL discrimination claim "if the record establishes as a matter of law that discrimination . . . played no role in the defendant's actions." *Id.* (citation modified).

Here, no reasonable jury could infer discriminatory intent on Defendants' part. "For purposes of [the] NYCHRL, a discriminatory motive can be shown either by . . . direct evidence of discrimination, including comments indicating prejudice on account of a protected characteristic, or by . . . facts showing that comparators were treated better than the plaintiff was." *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022) (citation modified). Plaintiff has not presented direct evidence of discrimination. Plaintiff testified that she heard from three different people that Bayuelo-Perri wanted to hire an unidentified Hispanic person for Plaintiff's role. Cuccia Dep. Tr. at 235:11-236:21. But Plaintiff does not put forward any of the exact statements, the dates on which they were made, or whether they were made in relation to any specific treatment Plaintiff was receiving from Bayuelo-Perri. Devoid of any context or detail, these statements do not reveal discriminatory intent or allow for the inference of such intent. Plus, "[i]t is well established that stray remarks alone do not support a discrimination

suit," *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 366 (2d Cir. 2025) (citation modified) (declining to infer gender animus where the plaintiff provided "almost no context for the purportedly discriminatory remarks"), even when made by a decision maker, *see Etienne v. MTA N.Y.C. Transit Auth.*, 205 N.Y.S.3d 2, 2 (1st Dep't 2024).

Additional undisputed facts further undermine any inference of discriminatory intent based on race, color, or national origin. Plaintiff and Bayuelo-Perri are both Caucasian and of Italian descent. Defts. 56.1 Stmt. ¶ 5. "Courts have recognized that an allegation that a decision is motivated by racial or national origin animus is weakened when the decisionmakers are members of the protected class as the plaintiff." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11 Civ. 3625 (MKB), 2013 WL 3968748, at *11 (E.D.N.Y. July 30, 2013) (collecting cases). There also is no dispute that Bayuelo-Perri recommended that HF Management hire Plaintiff as a community engagement specialist prior to her hiring in 2019. Defts. 56.1 Stmt. ¶ 4. "When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000) (citation modified); *see Jones v. Yonkers Pub. Schs.*, 326 F. Supp. 2d 536, 546 (S.D.N.Y. 2004) (explaining that this "inference is applicable so long as one management-level employee played a substantial role in both the hiring and firing of the plaintiff" (citation modified)). While Plaintiff's opposition brief now appears to contest whether Bayuelo-Perri recommended her hiring, *see* Opposition at 14, Plaintiff fails to proffer any evidence contravening Defendants' proof of Bayuelo-Perri's role, *see generally id.*; *see* Defts. 56.1 Stmt. ¶ 4.

Plaintiff also has not proffered any facts to support her allegation that Defendants "treat[ed] her differently from and less preferably than similarly-situated Hispanic employees," Am. Compl.

¶¶ 53, 59. *See Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 92-93 (S.D.N.Y. 2024) (collecting cases showing that a plaintiff fails to provide "minimal support for the proposition that the employer was motivated by discriminatory intent" when he does not "identify potential comparators, let alone allege facts indicating that these comparators were similarly situated to" him (citation modified)). "Absent any other evidence of discrimination, [Plaintiff] must establish that comparators were treated better than [she] was to survive summary judgment." *Reach v. Healthfirst, Inc.*, 23 Civ. 8085 (JPO), 2026 WL 1802838, at *8 (S.D.N.Y. June 23, 2026) (citation modified). Yet Plaintiff does not even address a comparator theory in her brief opposing the motion. *See generally* Opposition. "Arguments not made in opposition to a motion for summary judgment are deemed abandoned." *Nassry v. St. Luke's Roosevelt Hosp.*, No. 13 Civ. 4719 (GHW), 2016 WL 1274576, at *12 (S.D.N.Y. Mar. 31, 2016) (citation modified). And even were the Court to consider such a theory, the record does not support it. Plaintiff conceded at her deposition that she could not identify similarly-situated Hispanic colleagues. *See* Cuccia Dep. Tr. at 54:5-9 ("Q. [C]an you identify any Hispanic employees who . . . served in a position of community engagement specialist who [were] treated more preferably than you? A. No."); *see id.* at 60:13-17 ("Q. My question is whether any of the community engagement specialists who were Hispanic were treated more preferably than you were treated. A. I'm going to answer no to that."). And though she testified that she was treated worse than every black employee, *see id.* at 67:16-18 ("Q. So you were treated less well than every Black employee in the place? A. I would say."), she provided no basis for inferring discriminatory intent based on race or color. One black colleague she named was not supervised by Bayuelo-Perri and thus not similarly situated to Plaintiff. *See id.* at 68:18-20; *see Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (affirming dismissal where the comparators did not have the same

supervisors as the plaintiff). And though the other black colleague also was a community engagement specialist under Bayuelo-Perri's supervision, Plaintiff has not presented evidence that this employee was treated more favorably than Plaintiff, and, in fact, Plaintiff testified that she had no indication that Bayuelo-Perri treated that colleague better than Plaintiff because of their respective races, colors, or national origins. Cuccia Dep. Tr. at 75:14-76:25.

Even applying the NYCHRL's lenient standard, Plaintiff has failed to show that Defendants' treatment of her was motivated by her race, color, or national origin, so no reasonable jury could find that Defendants discriminated against her in violation of that statute. Because Plaintiffs' claims under the NYCHRL fail as a matter of law for lack of discriminatory intent, they necessarily also fail under the NYSHRL and under the stricter standards of Title VII, *see Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022), and Section 1981, *see Knox v. CRC Mgmt. Co.*, 134 F.4th 39, 47-48 (2d Cir. 2025) (applying *McDonnell Douglas* to a Section 1981 discrimination claim). *See Kurtanidze*, 2025 WL 1898927, at *15. The Court therefore grants summary judgment in Defendants' favor on the First and Second Causes of Action.

**B. No Rational Jury Could Find that Defendants Discriminated Based on Plaintiff's Disabilities.**

Defendants also move for summary judgment on Plaintiff's claim under the ADA for failure to accommodate and wrongful termination. Motion at 20-21; *see* Am. Compl. ¶¶ 64-65. Plaintiff alleges that she suffered from two "serious disabilities" starting in fall 2021, sciatica and severe anemia. Am. Compl. ¶ 4.

**1. Failure to Accommodate Under the ADA**

"A defendant violates the ADA by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such

covered entity can demonstrate that the accommodation would impose an undue hardship.'" *Clark v. Jewish Children's Ass'n, Inc.*, 96 F. Supp. 3d 237, 250 (S.D.N.Y. 2015) (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a *prima facie* case that an employer discriminated by failing to accommodate, a plaintiff must show that

> (1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013) (citation modified).

The evidence presented by the parties shows that Plaintiff made two requests for time off for medical reasons, and that Defendants did not refuse either. First, in September 2021, Plaintiff informed Defendants' employee relations manager that she would need to take time off because her physician had "placed [Plaintiff] off [her] feet" and advised her to see an orthopedist. Cuccia Dep. Tr., Exh. G at HF0226; *see* Opposition at 20. That leave request was granted. Defts. 56.1 Stmt. ¶ 44. Second, on January 7, 2022, Plaintiff requested time off on Fridays to receive iron infusions to treat her anemia. *Id.* ¶¶ 68-70. Defendants responded that Plaintiff would be allowed those days off as well. *Id.* ¶ 70; Cuccia Dep. Tr. at 226:10-14, 226:24-227:3. To be sure, at the time that leave was authorized, Defendants likely already knew that Plaintiff would be terminated the next business day, *see* Defts. 56.1 Stmt. ¶ 73, and Plaintiff argues that she was fired before she could make any "formal" accommodation request, Opposition at 16-17. But while that fact and argument may be material to Plaintiff's wrongful-termination claim, *see infra* III.B.2, Plaintiff does not explain how they contribute to a *prima facie* case of failure to accommodate. Because Plaintiff offers no evidence that Defendants denied any accommodation request, the Court grants summary judgment in Defendants' favor on this part of her ADA claim.

**2. Wrongful Termination Under the ADA**

Defendants are also entitled to summary judgment on Plaintiff's claim of wrongful termination under the ADA. ADA discrimination claims such as these are subject to the familiar *McDonnell Douglas* burden-shifting analysis. *See McMillan*, 711 F.3d at 125. "Under that framework, once a plaintiff produces minimal evidentiary support for the claim of discriminatory motivation, the burden of production shifts to the employer to articulate a non-discriminatory reason for the adverse employment action." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citation modified). If an employer meets this burden, a plaintiff "must prove that the employer's proffered reason was a pretext for discrimination . . . by presenting facts, which taken in his favor, suffice to show that a triable issue exists as to whether his [disability] was a 'but for' cause of" the adverse employment action. *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (citation modified); *accord McCrain v. Metro. Transp. Auth.*, No. 17 Civ. 2520 (RA), 2020 WL 1285634, at *13 (S.D.N.Y. Mar. 18, 2020) (ADA).

In support of this claim, Plaintiff points to her firing just one business day after she requested time off to receive iron infusions. Opposition at 16-17; *see* Am. Compl. ¶¶ 45, 65; Defts. 56.1 Stmt. ¶¶ 69, 73 (stating that Plaintiff requested time off on January 7, 2022, and was fired on January 10, 2022). The Court need not reach whether that temporal proximity is sufficient to support an inference of discrimination, because Defendants proffer a legitimate, non-discriminatory reason for terminating Plaintiff—namely her poor work performance—and there is no evidence that this justification was pretextual.

Plaintiff's underperformance began by May 2021, approximately five months before her first request for time off. Around that time, Bayuelo-Perri observed Plaintiff missing deadlines, failing to follow instructions and to follow up with partners, and demonstrating poor time management. Defts. 56.1 Stmt. ¶¶ 19, 21. Bayuelo-Perri met with Plaintiff on May 3, 2021, to

address those issues. *Id.* ¶¶ 23, 25; *see* Progress Notes at HF0071. From that discussion sprouted a series of meetings from May to September 2021 during which Bayuelo-Perri coached Plaintiff on time management, prioritization, and meeting deadlines. *See* Defts. 56.1 Stmt. ¶¶ 25-29; Progress Notes at HF0071-HF0075. Yet Plaintiff's work did not show improvement. In an entry dated June 28, 2021, Bayuelo-Perri recorded that Plaintiff had "missed [a] team calendar deadline for the second time [in] a consecutive month." Progress Notes at HF0072. The next month, Bayuelo-Perri became upset with Plaintiff when she refused to work a Sunday event. *See* Pl. 56.1 Counter Stmt. ¶ 30; Defts. 56.1 Stmt. ¶ 30; Cuccia Dep. Tr. at 174:4-176:8; *see also* Job Description at 2 (providing that community engagement specialists "[m]ust be willing to work nights and weekend (Saturday and Sunday) events as needed"). In August, Bayuelo-Perri recorded in her notes that Plaintiff underperformed at a meeting with sales managers and directors, presenting only a limited set of events and failing to "reflect[] target territories opportunities, community activities or Medicare events," and that Plaintiff demonstrated a "concern[ing] . . . lack of initiative on meeting partners virtually or in person." Progress Notes at HF0073. Plaintiff additionally did not contribute constructively to a meeting of her team and upper management meant to address "bandwidth and collaboration," despite previously complaining about staffing requirements. *Id.* at HF0074; *see* Defts. 56.1 Stmt. ¶ 33. Several weeks later, Plaintiff was the only person on the community engagement team to have no events to report at a meeting, and did not even offer an explanation for that failure. Defts. 56.1 Stmt. ¶ 36; *see* Progress Notes at HF0075.

Bayuelo-Perri issued Plaintiff the PIP on September 23, 2021—four days before her first request for time off. Defts. 56.1 Stmt. ¶ 38; *see* PIP Email. The PIP warned Plaintiff that her performance was substandard due to her "[o]ngoing lack of attention to detail," "[i]nability to

follow instructions," "[p]oor time management while coordinating projects," "[d]eadlines missed," "[d]elays with report submission," and "[d]elayed responses (emails/calls etc.)." PIP Email at HF0032. The PIP also noted that Plaintiff was "not always receptive to feedback" and "continue[d] to not meet [her] job expectations." *Id.* at HF0033. It further warned that "[i]mmediate improvement is required," and "[f]ailure to meet the . . . action plans will result in further disciplinary action, up to and including termination of employment." *Id.* at HF0034. Yet, Plaintiff met with a colleague for peer coaching the next day, and that colleague reported back to Bayuelo-Perri that Plaintiff was inattentive and the meeting was unproductive. Defts. 56.1 Stmt. ¶¶ 42-43. At least one other Healthfirst employee complained to Bayuelo-Perri about Plaintiff's performance, as well. The community relations manager for Queens, Brooklyn, and Staten Island informed Bayuelo-Perri that Plaintiff had not met her deliverables or organized events properly, requiring the manager to coordinate the events on her own. *Id.* ¶ 53; *see* Bayuelo-Perri Dep. Tr. at 94:2-11.

Plaintiff's performance did not improve after she returned from leave in November 2021. She continued to fail to complete assignments on time, *see* Defts. 56.1 Stmt. ¶¶ 58-59, and in early December, a human resources employee notified Bayuelo-Perri that Plaintiff had disrupted a phone call when she included a former colleague unannounced, Bayuelo-Perri Decl. ¶ 12.[5] Bayuelo-Perri noted those instances in the Justification of Termination memorandum recommending Plaintiff's termination. Defts. 56.1 Stmt. ¶¶ 62, 65.

---

[5] Bayuelo-Perri explained that Plaintiff had "caused a commotion by having a former employee join a phone call unannounced in which another employee called him lazy." Bayuelo-Perri Decl. ¶ 12. She described the incident in the Justification of Termination memorandum as "an example of [Plaintiff] causing issues within the department." JOT at 2.

In citing this evidence, Defendants provide "clear and specific" reasons for terminating Plaintiff "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Carlton*, 202 F.3d at 133 (citation modified). Plaintiff fails to come forward with evidence that gives rise to a genuine issue of material fact that Defendants' stated reasons for her termination was a pretext for discrimination. In particular, there is no evidence allowing a reasonable jury to conclude that Plaintiff's foot and back injuries, which forced her out of the office from September to November 2021, or her anemia, for which she requested leave on January 7, 2022, was a but-for cause of Bayuelo-Perri's recommendation and HF Management's decision to terminate her. *See Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024) (explaining what a plaintiff must show at the third step of *McDonnell Douglas*). Plaintiff does not point to any statement or other evidence indicating that Defendants ever accounted for Plaintiff's disabilities in reaching that decision.

For these reasons, "Plaintiff has failed to set forth sufficient evidence from which a reasonable jury could find that [Defendants'] proffered neutral explanation was pretextual and that animus" to her disabilities motivated their decision to fire her. *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 198 (E.D.N.Y. 2009). Accordingly, the Court grants summary judgment in Defendants' favor as to Plaintiff's wrongful-termination claim in her Third Cause of Action.

### C. No Rational Jury Could Find that Defendants Retaliated Against Plaintiff.

Lastly, summary judgment is warranted as to Plaintiff's Fourth and Fifth Causes of Action alleging retaliation in violation of the ADA, the NYSHRL, and the NYCHRL. *See* Am. Compl. ¶¶ 68-81. Plaintiff contends that Defendants retaliated against her for complaining to human resources about the "extremely hostile" work environment in July 2021, requesting time off to

recover from her foot injury in September 2021, and requesting time off to receive iron infusions in January 2022. Opposition at 18-20. The *McDonnell Douglas* burden-shifting framework again guides the Court's analysis. *See Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (NYSHRL and NYCHRL); *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (ADA and NYSHRL).

The Court begins with Plaintiff's retaliation claims under the NYCHRL and the NYSHRL, which courts in the Second Circuit analyze together on summary judgment. *See Edelman*, 141 F.4th at 45. To establish *prima facie* retaliation under those statutes, a plaintiff "must demonstrate that she" engaged in a protected activity such as "opposing her employer's discrimination" or requesting a reasonable accommodation, and that, "as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* (citation modified) (noting that this standard is "more liberal" than that of Title VII); *see Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (describing the retaliation provisions of Title VII and the ADA as "substantially similar"); N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7). "[S]ummary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision." *Mihalik*, 715 F.3d at 116.

Defendants first challenge Plaintiff's contention that her July 2021 complaint constituted a protected activity. Motion at 23-25; Reply at 5-6. The NYCHRL and the NYSHRL have rules of construction requiring that their provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." N.Y.C. Admin. Code § 8-130; *see* N.Y. Exec. L. § 300 (similar). As a result, the NYCHRL has been construed such that "opposing any practice [forbidden by that statute] can include situations where a person . . . merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she

thought his treatment of the victim was wrong." *Mihalik*, 715 F.3d at 112 (citation modified). Yet even under that relatively liberal standard, there is no evidence that Plaintiff's July 2021 email addressed discrimination. The email, which Plaintiff sent after a confrontation with Bayuelo-Perri, stated only: "The way in which I was spoken to was extremely hostile for this work environment. It is extremely uncomfortable [and] toxic for me." Cuccia Dep. Tr., Exh. O at Cuccia000059. At her deposition, Plaintiff conceded that she had no reason to believe that Bayuelo-Perri spoke harshly to her based on the fact that Plaintiff is white, Italian, or Caucasian, or because of any disability she had. Cuccia Dep. Tr. at 176:13-177:20. Indeed, at no time did Plaintiff communicate to human resources that she believed she was discriminated against because she was white, Italian, or Caucasian. *Id.* at 180:13-23. To be sure, under New York law "implicit opposition to *discrimination* [is] sufficient to support a retaliation claim." *McCabe v. 511 W. 232nd Owners Corp.*, 264 N.E.3d 169, 177 (N.Y. 2024) (emphasis added) (citing *Albunio v. City of New York*, 947 N.E.2d 135 (N.Y. 2011)). But Plaintiff has not presented any evidence to allow a rational jury to conclude that she had a "good faith, reasonable belief" that she was challenging unlawful discrimination in that email, as opposed to objecting to what she considered to be an unduly harsh recrimination, as reflected in her deposition testimony. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-15 (2d Cir. 2013) (explaining that "[t]he reasonableness of the plaintiff's belief should be assessed in light of the totality of the circumstances"); *see Edelman*, 141 F.4th at 46 (extending the *Kelly* standard to NYSHRL and NYCHRL retaliation claims). Because no rational jury could conclude that Plaintiff's July 2021 email was protected activity, Plaintiff's claim that any subsequent adverse action based on that email constitutes retaliation fails as a matter of law.

Next, Defendants seek summary judgment on Plaintiff's claims that Defendants retaliated against her for requesting time off to treat her foot injury and anemia. Motion at 21-25; Reply at 6-9. With respect to those requests for accommodation, Plaintiff fails to satisfy the causation prong of *prima facie* retaliation, and even if she could, she fails to create a genuine dispute as to pretext. There is no evidence that Defendants took a retaliatory step against Plaintiff after her first request for time off. She made that request on September 27, 2021, Defts. 56.1 Stmt. ¶ 44, four days *after* she received the PIP that followed months of her underperformance, *see* PIP Email at HF0032 ("Your work over the last 5 months has been below expectations."), made clear that Plaintiff was not satisfying expectations, and warned that "[f]ailure to meet the . . . action plans will result in further disciplinary action, up to and including termination of employment," *id.* at HF0034. Because the PIP pre-dated Plaintiff's first request for time off, Defendants could not have issued it in retaliation for that request. Nor is there a basis to claim that Plaintiff's ultimate termination was retaliation for her request for time off in September 2021 given that her work performance did not improve at all after her return to the job. *See Cadet-Legros v. N.Y. Univ. Hosp. Ctr.*, 21 N.Y.S.3d 221, *7 (1st Dep't 2015) (affirming summary judgment on an NYCHRL retaliation claim where the plaintiff failed to show causation when the plaintiff, following her complaint of discrimination, engaged in the "same type of conduct that had previously produced final warnings and poor evaluations").

Plaintiff also has not presented any evidence to allow a rational jury to conclude that her termination resulted from her second request for time off on January 7, 2022. *See* Defts. 56.1 Stmt. ¶ 69. Though she did not know it at the time, Plaintiff was well on the way to being terminated when she made that request. While Plaintiff challenges whether Defendants in fact have a policy of not firing staff during the holiday season, there is no question that the early December 2021

Justification of Termination memorandum proposed terminating her on January 10, 2022, which is the day she ultimately was terminated. JOT at 1; Reply at 8 & n.10. That an accommodation was requested in the period between the submission of a memorandum recommending termination and the actual termination does not alone render the firing a retaliatory act, especially where the plaintiff has not meaningful disputed the non-discriminatory grounds for termination. *See Cayemittes v. City of N.Y. Dep't of Hous. Preserv. & Dev.*, 974 F. Supp. 2d 240, 263 (S.D.N.Y. 2013) ("An employer should not be required to put a previously-planned, legitimate employment decision on hold simply because an employee engaged in protected activity."); *cf. Wright v. N.Y.C. Off-Track Betting Corp.*, No. 05 Civ. 9790 (WHP), 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008) ("If an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory.").

Even if Plaintiff established causation based on the temporal proximity of her requests for accommodations and Defendants' adverse action of termination, her substandard performance—documented in the PIP and in the Justification of Termination memorandum and the subject of months of coaching sessions—provides a legitimate explanation for her termination, and she fails to proffer sufficient evidence to create a genuine dispute of an unlawful motivation or pretext. "Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013). Bayuelo-Perri submitted the Justification of Termination memorandum on December 8, 2021, with an "Anticipated Action Date" of January 10, 2022. JOT at 1. Of course, when Bayuelo-Perri proposed that termination date she had no way of knowing that Plaintiff would request medical leave the prior business day. Defendants terminated Plaintiff on January 10, 2022, consistent with the recommendation in the

Justification of Termination memorandum and based on all the evidence of Plaintiff's unsatisfactory work in the preceding seven months. *See supra* III.B.2.

Similarly, Plaintiff fails to create a genuine dispute that Defendants had an unlawful motivation when, the day she returned from leave in November 2021, her supervisor assigned her to a walking-intensive task in Brooklyn. *See* Opposition at 20-21. Plaintiff has not shown that Defendants considered her time off when they gave her, along with other colleagues, that assignment, Defts. 56.1 Stmt. ¶ 52, and even to the extent that Defendants were aware that she had just recovered from a foot injury, Plaintiff had produced a doctor's note stating that she could perform "normal work activities," Doctor's Note, of which the Brooklyn visit was one. Because Plaintiff fails to show any evidence of an unlawful motivation or pretext, this theory of retaliation too fails on summary judgment.

Defendants therefore are entitled to summary judgment on Plaintiffs' retaliation claims under the NYSHRL and the NYCHRL. Retaliation claims under the ADA involve the same burden-shifting test but with a more stringent causation standard, *see Tafolla*, 80 F.4th at 125, so Defendants are entitled to summary judgment on Plaintiff's ADA retaliation claim as well. Accordingly, the Court grants Defendants' motion for summary judgment as to the Fourth and Fifth Causes of Action.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment in its entirety. The Clerk of Court is respectfully directed to enter judgment for Defendants and to terminate the case.

SO ORDERED.

Dated: July 21, 2026
New York, New York

JOHN P. CRONAN
United States District Judge